UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH DUCATO,<br><br>    Plaintiff,<br><br>v.<br><br>U.A LOCAL NO. 393 BENEFIT FUNDS,<br><br>    Defendant. | Case No. 14-CV-01875-LHK<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 26, 27 |

This is an action for retirement benefits pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et seq. ("ERISA"). Before the Court are the parties' cross-motions for summary judgment. Having considered the parties' submissions and arguments, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's motion for summary judgment.

## I. BACKGROUND

Plaintiff Joseph Ducato ("Ducato") was a member of the U.A. Local No. 393 Plumbers, Steamfitters, and Refrigeration Fitters Union for 27 years. ECF No. 1 ("Compl.") at ¶ 1. Defendant U.A. Local No. 393 Benefits Fund ("Defendant") is a Trustee of benefit funds

1

14-CV-01875-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

maintained in the U.A. Local No. 393 Defined Contribution Benefit Plan ("Plan").  *Id.* ¶ 2.

The Plan consists of two types of pensions.  ECF No. 27-2 (Jesinger Dep.) at 13:23-14:25.  Part A is a Defined Benefit Plan funded only by employers on behalf of their employees.  *Id.*  Part B, the part at issue here, is a Defined Contribution Plan to which both employees and employers contribute.  *Id.* at 14:22-25.  Ducato and his employers contributed to both parts of the Plan.  Compl. at ¶ 3.

Over the course of his career, Ducato developed a back condition which led to his "inability to work in the plumbing trades."  Compl. at ¶¶ 3-4.  Ducato resigned as a member of the Union in 2011.  *Id.* ¶ 4.  In an effort to pay for education and training to pursue a new career, Ducato requested a "lump sum distribution" of Part B of his Plan account.  *Id.*  Ducato made four total requests for distributions from the Plan.  *Id.* ¶¶ 5, 6, 8; ECF No. 26-1 ("Defendant MSJ") at 2.  Defendant denied each request.  Compl. ¶ 5.

Ducato's Complaint relates to a July 5, 2013 request for a "roll over" distribution of the funds in Part B of his Plan account to an Individual Retirement Fund.  Compl. at ¶ 8; ECF No. 27 ("Ducato MSJ") at 3; ECF No. 26-2 ("July 5, 2013 Request").  The July 5, 2013 Request stated:

> After much consideration, I am making a formal request for a lump sum Rollover Distribution of my account in the UA Local Defined Contributions Plan per Article VI, Section 6 of the Plan.

This request was denied on August 16, 2013.  ECF No. 26-2 ("August 16, 2013 Denial").  The denial letter from Defendant stated:

> Based upon a review of your file, you are not eligible for a distribution from the Plan at this time because you do not meet the eligibility requirements described in Article 6, Section 1 of the Plan.  The earliest you would be eligible for a distribution from the Plan may be age 52, provided you meet all Plan requirements at that time.

Ducato alleges that this denial violates ERISA.

## II. LEGAL STANDARDS

### A. Standard of Review in ERISA Cases

2

Under ERISA § 502, a beneficiary or plan participant may sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1871 (2011); *Aetna Health Inc. v. Davila,* 542 U.S. 200, 210 (2004). A claim of denial of benefits in an ERISA case "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Montour v. Hartford Life & Acc. Ins. Co.,* 588 F.3d 623, 629 (9th Cir. 2009). If the plan confers such discretion, then the denial is reviewed for an abuse of discretion. *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 110–11 (2008).

Here, the parties dispute whether a de novo or abuse of discretion standard applies. As explained *infra*, the Court finds that a de novo standard of review applies.

### B. Summary Judgment Standard of Review

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputes of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III. ANALYSIS

### A. The De Novo Standard of Review Applies

Both parties acknowledge that an abuse of discretion standard applies when a plan unambiguously provides discretion to the plan administrator. Ducato MSJ at 5; Defendant MSJ at 4. Here, the Plan's Article 11, Section 1, titled "Appeals to the Plan," provides that: "The Board

3

14-CV-01875-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1  of Trustees shall have full discretionary authority to interpret Plan language and to decide all

2  claims or disputes regarding right, type, amount, duration of benefits, or claim to any payment

3  from this Trust." ECF No. 26-2 (Plan Booklet) at 108. Despite this provision, Ducato argues that

4  de novo review should apply in this case.

5  Ducato first argues that the August 16, 2013 Denial was not based on the exercise of any

6  discretion. Ducato MSJ at 5. This is not persuasive because the denial was based on an

7  application of the Plan language, specifically Article 6, Section 1, to a claim for payment from the

8  Plan. *See* August 16, 2013 Denial. This is the type of decision for which the Board of Trustees is

9  given "full discretionary authority" under the express terms of the Plan. *See* Plan Booklet at 108;

10  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) ("[I]f the plan does confer

11  discretionary authority as a matter of contractual agreement, then the standard of review shifts to

12  abuse of discretion.").

13  Ducato next argues that the denial was not based on a decision of the Board of Trustees,

14  but instead was based on a decision of the plan administrator, and the Board of Trustees did not

15  delegate its discretionary authority to the plan administrator. ECF No. 28 at 2. "When an

16  unauthorized body that does not have fiduciary discretion to determine benefits eligibility renders

17  such a decision . . . deferential review is not warranted." *Jebian v. Hewlett-Packard Co. Employee*

18  *Benefits Organization Income Protection*, 349 F.3d 1098, 1105 (9th Cir. 2003). The August 16,

19  2013 Denial was signed by a "Plan Associate" and not the Board of Trustees. ECF No. 26-2. If

20  the "Plan Associate" was not delegated discretionary authority by the Board of Trustees, de novo

21  review applies. *See Nelson v. EG & G Energy Measurements Group Inc.*, 37 F.3d 1384, 1388 (9th

22  Cir. 1994) (de novo review applied because unspecified employee and not "Administrative

23  Committee" denied benefits, where Administrative Committee had not delegated authority to

24  employee).

25  Here, the Plan does not contain any express delegation of authority to a plan administrator,

4
14-CV-01875-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

1   or contain any mention of the Board's power to delegate its authority. *See Shane v. Albertson's*

2   *Inc.*, 504 F.3d 1166, 1170 (9th Cir. 2007) (finding Board did not properly delegate its authority,

3   despite Plan's provision to Board of the power to delegate Board's discretionary authority);

4   *Hensley v. Northwest Permanente P.C. Retirement Plan*, 258 F.3d 986, 998 (9th Cir. 2001),

5   overruled on other grounds by *Abatie*, 458 F.3d at 966 (holding that delegation of discretionary

6   authority to third-party from identified plan fiduciary was sufficient because plan contemplated

7   delegation; the plan did not require delegation to be in writing; and affidavits were submitted

8   stating that delegation of discretionary authority took place).

9       Defendant points out that the plan is "administered directly by the Board of Trustees with

10  the assistance of a contract manager." Plan Booklet at 114. This statement is found in a section

11  titled "Supplementary Information About the Plans," and is attached to the Plan following the

12  "Formal Plan Text." *Id.* This statement, which does not appear to be a part of the Plan itself, is

13  not sufficient to delegate the Board's authority or even establish that the Plan allowed the Board to

14  delegate its authority. For example, in *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 924 n.

15  1 (9th Cir. 2012), the Ninth Circuit found delegation where the plan stated: "In exercising its

16  discretionary powers under the Plan, the Plan Administrator, and any designee (which shall

17  include Unum as a claims fiduciary ) will have the broadest discretion permissible under ERISA."

18  In the instant case, the statement that the Board of Trustees will be "assisted" by a contract

19  manager falls short of an explicit statement establishing delegation of authority such as in *Stephan*.

20      Defendant does not cite any other evidence suggesting that (1) the Plan contemplated that

21  the Board could delegate its authority or (2) the Board of Trustees actually delegated its authority.

22  Accordingly, de novo review applies. *Jebian*, 349 F.3d at 1105.

23      **B. The Plan Administrator's Decision to Deny the Distribution Request was Correct**

24      Ducato's July 5, 2013 Request was made pursuant to Article 6, Section 6 of the Plan. *See*

25  ECF No. 26-2. Ducato argues that Article 6, Section 6 "permits the transfer of funds owned by the

5

individual plumber to another account he controls" and "[t]he failure to permit the rollover was a clear violation of the plan language." Ducato MSJ at 5. Defendant argues that although Article 6, Section 6 allows for rollover of a distribution, a participant must first be eligible for a distribution under Article 6, Section 1. Indeed, the July 5, 2013 Request was denied "because [Ducato did] not meet the eligibility requirements described in Article 6, Section 1." August 16, 2013 Denial. For the reasons stated below, the Court agrees with Defendant's interpretation of these two sections: Ducato must first qualify for a distribution under Article 6, Section 1 and then elect an eligible rollover distribution under Article 6, Section 6.

The Plan language and structure support Defendant's position. Article 6 as a whole is titled "Payment of Benefits." Plan Booklet at 87. Article 6 begins by laying out the requirements for distributions from the plan. Specifically, Article 6, Section 1 provides:

> 1. Eligibility for Distributions: . . .
>
> (b) Employees shall also be entitled to distribution upon application of the Employee on or after any of the following times: . . .
>
>> (iv) When the Employee has attained age 52 with 25 or more Years of Benefit Credit under the U. A. Local No. 393 Defined Benefit Plan, and permanently ceased to perform all Industry Service in the Plumbing and Pipefitting Industry (as those terms are defined in the Defined Benefit Plan).

*Id.* at 87-88.[1] Section 2 details different forms of benefits, such as annuities and lump sum payments. *Id.* at 88-93. Section 3 provides for distributions in the event of death. *Id.* at 93-95. Section 4 lists "limitations on retention of plan accounts." *Id.* at 95-98. Section 5 details distributions on severance from employment. *Id.* at 98-100.

The next section relevant to the instant dispute is Section 6, which lists the requirements for rolling over a distribution into an eligible retirement plan. Article 6, Section 6 provides:

---

[1] There is no dispute that Ducato was not 52 years old when he submitted the July 5, 2013 Request.

> 6. Rollovers of Distributions
>
> (a) This Section applies to distributions made on or after January 1, 1993. Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this Section, a distributee may elect, at the time and in the manner prescribed by the plan administrator, to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover.
>
> (b) Definitions
>
>> (i) Eligible rollover distribution: An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include: [various tax restrictions not applicable here].

*Id.* at 100. Reading Section 1 and Section 6 in sequence, it is apparent from the plain language and structure of Article 6 that a distributee must qualify for a distribution under Section 1 before the distributee can elect to rollover the distribution under Section 6. The sequence of the sections within Article 6 supports this interpretation, as Section 1 first provides the authority for making a distribution, and Section 6 then allows a distributee to rollover certain distributions. *Id.* at 87 ("Eligibility for Distributions"). Furthermore, Section 6 does not authorize any distributions, but presupposes that a distribution was made under an earlier section of Article 6. *Id.* at 100 ("An eligible rollover distribution *is any distribution*") (emphasis added).

Ducato's arguments to the contrary are not persuasive. Specifically, Ducato argues that Defendant's interpretation of the Plan is incorrect for three reasons: (1) Article 6, Section 1 "cannot limit a rollover distribution"; (2) Article 6, Section 1 negates the definition of "eligible rollover distribution" in Section 6(b)(i); and (3) U.A. Local 393's interpretation of the Plan "ignores the fundamental differences between the types of transactions dealt with separately by the Plan." ECF No. 31 (Ducato Reply) at 2. The Court addresses each of Ducato's arguments in turn.

First, Ducato argues that requirements for distribution in Article 6, Section 1 conflict with the statement in Article 6, Section 6 that: "[n]otwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this Section." Ducato's position

7
14-CV-01875-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1  is that the limits on eligibility for a distribution "otherwise limit a distributee's election" to

2  rollover a distribution.  This is not persuasive.  The limits in Article 6, Section 1 apply to

3  eligibility for a distribution in the first instance.  Once a distribution is made, nothing in Article 6,

4  Section 1 limits a distributee's election to rollover a distribution.

5  Second, Ducato argues that the limits in Article 6, Section 1 conflict with the definition of

6  "eligible rollover distribution" in Article 6, Section 6(b)(i).  Section 6(b)(i)'s definition of an

7  "eligible rollover distribution" is "any distribution of all or any portion of the balance [of the

8  Plan]."  Plan Booklet at 100.  Ducato's argument is not persuasive for the same reason just

9  discussed: Article 6, Section 6(b)(i) presupposes that a distribution has been made.  In order to

10  qualify for a distribution, the distributee must first meet the requirements of Article 6, Section 1.

11  This interpretation is further supported by Article 6, Section 2, which provides that "the

12  forms of benefit available to an Employee who attains eligibility for a distribution from the Plan

13  shall be the following . . ."  Plan Booklet at 89-90.  This section makes clear that an employee

14  must first "attain[] eligibility for a distribution" and then may receive a distribution in various

15  forms (including an annuity, lump sum payment, fixed periodic payments, etc.).  The eligibility

16  requirements are set forth in Article 6, Section 1, titled "Eligibility for Distributions."

17  Finally, Ducato argues that Defendant's position conflicts with the purpose of Part B of the

18  Plan.  Ducato argues that Part B was "designed to be portable, that is under the control of the

19  individual who has a vested right to the benefits."  Ducato Reply at 3.  This argument is not

20  supported by any citations to the Plan's language.  Indeed, the only support for this argument is an

21  answer to "Questions about Pension Part B" which allows a participant to transfer their funds to

22  another U.A. Local Union.  Plan Booklet at 72.  The Booklet further explains that this "Inter-Plan

23  Transfer" "is similar to a rollover, but it is available *even when you are not otherwise eligible for a*

24  *distribution*."  *Id.* (emphasis added).  Thus, this section further supports Defendant's position that

25  eligibility for a distribution is a prerequisite to electing to rollover the distribution into a new

8
14-CV-01875-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

1  retirement account.  The ability to transfer funds to another related union does not suggest to the
2  Court that applying the explicit eligibility requirements of Article 6, Section 1 conflicts with the
3  purpose of Part B of the Plan.
4      Accordingly, the Court finds that the Plan Administrator correctly applied Article 6,
5  Section 1 to Ducato's request for a distribution.  There is no dispute that Ducato did not meet the
6  eligibility requirements of that section.  The Plan Administrator's decision to deny the request was
7  in accordance with the express terms of the Plan.  The Court therefore GRANTS Defendant's
8  motion for summary judgment and DENIES Plaintiff's motion for summary judgment.

## IV. ORDER

Because Defendant correctly applied Article 6, Section 1 in denying Plaintiff's distribution request, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's motion for summary judgment.  The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: April 22, 2015

_____
Lucy H. Koh
United States District Judge